PAMELA A. BOILEAU
v.
ANN M. SEAGRAVE.
No. COA07-1431
Court of Appeals of North Carolina
Filed October 21, 2008
This case not for publication
James, McElroy & Diehl, P.A., by G. Russell Kornegay, III, Preston O. Odom, III, and Sarah M. Brady, for Plaintiff.
Horack, Talley, Pharr & Lowndes, PA, by Kary C. Watson for Defendant.
STEPHENS, Judge.
Plaintiff Pamela A. Boileau and her husband, Mr. Boileau, were married on 30 July 1977. In 2003, Plaintiff and Mr. Boileau joined St. Alban's Episcopal Church in Davidson, North Carolina, where Defendant Ann M. Seagrave was also a member. Plaintiff and Mr. Boileau became friends with Defendant and spent time with her in and out of church.
On 30 December 2003, Defendant and Mr. Boileau kissed in a local restaurant parking lot. On 9 January 2004, Defendant and Mr. Boileau had sexual intercourse with each other. Over the next six months, Defendant continued to have sexual relations with Mr. Boileau while maintaining her friendship with Plaintiff. In June 2004, Plaintiff discovered Defendant's relationship with Mr. Boileau and moved out of the marital home.
On 21 April 2005, Plaintiff filed a complaint against Defendant for alienation of affections and criminal conversation. On 30 June 2005, Defendant filed an answer and counterclaim against Plaintiff, asserting defamation. On 5 September 2006, Defendant filed a motion in limine to exclude the testimony of Ms. Clara Boyer and other evidence relating to Defendant's alleged misconduct with Ms. Boyer's husband during the Boyer's marriage (collectively "the Boyer evidence"). The trial court granted the motion pursuant to N.C. Gen. Stat. § 8C-1, Rule 403.
The case came on for trial during the 5 September 2006 civil session of Mecklenburg County Superior Court, and on 20 September 2006 the jury returned a verdict (1) finding Defendant liable for alienation of affections and awarding Plaintiff $1.00 in compensatory damages and $5,000.00 in punitive damages; (2) finding Defendant liable for criminal conversation and awarding Plaintiff $1.00 in compensatory damages and $105,000.00 in punitive damages; (3) finding Plaintiff not liable for libel; and (4) finding Plaintiff liable for slander and awarding Defendant $1.00 in compensatory damages and $100,000.00 in punitive damages. The verdict resulted in a net award of $10,001.00 to Plaintiff. On 4 October 2006, the trial court entered judgment upon the jury verdict.
On 16 October 2006, Plaintiff filed a motion, pursuant to N.C. Gen. Stat. § 1A-1, Rule 59, seeking to set aside a portion of the jury verdict and for a new trial. The trial court entered an order denying the motion on 12 December 2006. On 11 January 2007, Plaintiff filed notice of appeal from the 4 October 2006 judgment and from the trial court's order denying Plaintiff's Rule 59 motion. On 19 January 2007, Defendant filed notice of appeal from the 4 October 2006 judgment.

I. The Boyer Evidence

A. Exclusion of the Boyer Evidence
Plaintiff first argues that the trial court erred by excluding the Boyer evidence. We disagree.
Relevant evidence is generally admissible. N.C. Gen. Stat. § 8C-1, Rule 401 (2007). However, the trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2007). "In making its determination with respect to the Rule 403 balancing test, a trial court must analyze the similarity and temporal proximity between the acts." State v. Mabrey, 184 N.C. App. 259, 265, 646 S.E.2d 559, 563 (2007) (quotation marks and citation omitted). "[R]emoteness in time tends to diminish the probative value of the evidence and enhance its tendency to prejudice." State v. Artis, 325 N.C. 278, 300, 384 S.E.2d 470, 482 (1989), vacated on other grounds, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).
Whether to exclude evidence under Rule 403 is a matter within the sound discretion of the trial court, and the ruling may be reversed for an abuse of discretion only upon a showing that the decision was so arbitrary it could not have been the result of a reasoned decision. State v. Jones, 89 N.C. App. 584, 367 S.E.2d 139 (1988), overruled in part on other grounds by State v. Hinnant, 351 N.C. 277, 523 S.E.2d 663 (2000).
The North Carolina Supreme Court has been liberal in allowing evidence of similar sex offenses to show a common plan or scheme in trials on sexual crime charges, especially when the alleged victims have been children. State v. Cotton, 318 N.C. 663, 351 S.E.2d 277 (1987). See State v. Bagley, 321 N.C. 201, 362 S.E.2d 244 (1987), cert. denied, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988); State v. Gordon, 316 N.C. 497, 342 S.E.2d 509 (1986); State v. DeLeonardo, 315 N.C. 762, 340 S.E.2d 350 (1986) (admitting evidence of other similar sex offenses to show a common scheme or plan to molest children and concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice). However, evidence that a defendant engaged in prior acts of sexual misconduct has been excluded by our Supreme Court and this Court when the prior acts have been too remote in time. See State v. Jones, 322 N.C. 585, 369 S.E.2d 822 (1988) (concluding that defendant's prior acts of sexual misconduct that occurred seven years before the trial were too remote in time to be admissible); State v. Delsanto, 172 N.C. App. 42, 615 S.E.2d 870 (2005) (concluding that evidence the defendant engaged in acts of sexual abuse 23 years prior to the acts charged was inadmissible due to remoteness). Here, Plaintiff argues that the Boyer evidence was relevant to Plaintiff's claim for punitive damages, to impeach Defendant's testimony and veracity, and to Plaintiff's defense of Defendant's defamation counterclaim due to the similarity of the prior and present conduct. Plaintiff asserts that had Ms. Boyer been allowed, she would have testified that Defendant's destruction of her marriage was similar to Defendant's destruction of Plaintiff's marriage in that: Defendant met both married couples at church, befriended both couples, began illicit relationships with the husbands, hid the illicit relationships from the wives while maintaining their friendships, continued seeing the husbands after the marriages had ended, and was not ashamed or disgraced by her conduct. The Boyer marriage dissolved allegedly as a result of Defendant's conduct in 1973, more than 30 years before the events in this case took place.
As this evidence is being offered in a civil case where the victim is an adult, and is not being introduced to show that Defendant's prior and present acts arose out of a common scheme or plan, the Court's precedent for liberally allowing such evidence is inapplicable. Furthermore, even if the evidence of Defendant's prior conduct contains sufficient similarities to the present conduct and, thus, is probative of Defendant's conduct in this case, the passage of approximately 30 years between Defendant's prior acts and the acts charged diminishes the probative value of the evidence and enhances the tendency to cause unfair prejudice and confusion of the issues. Accordingly, the trial court's exclusion of the Boyer evidence on grounds that "the potential confusion and prejudicial value of the evidence outweighs the probative value" is not manifestly unsupported by reason. We thus conclude that the trial court did not abuse its discretion in excluding the evidence. Plaintiff's argument is overruled.

B. Jury Instruction
Plaintiff also contends the trial court erred by failing to instruct the jury to consider "the existence and frequency of any similar past conduct by the defendant" when deciding punitive damages.
"When a party's requested jury instruction is correct and supported by the evidence, the trial court is required to give the instruction." Whiteside Estates, Inc. v. Highlands Cove, L.L.C., 146 N.C. App. 449, 464, 553 S.E.2d 431, 441 (2001), disc. review denied, 356 N.C. 315, 571 S.E.2d 220 (2002). "The instructions must be based on evidence, which when viewed in the light most favorable to the proponent, will support a reasonable inference of each essential element of the claim or defense asserted." Anderson v. Austin, 115 N.C. App. 134, 136, 443 S.E.2d 737, 739, disc. review denied, 338 N.C. 514, 452 S.E.2d 806 (1994).
In determining the amount of punitive damages, if any, to be awarded, the trier of fact may consider, inter alia, "[t]he existence and frequency of any similar past conduct by the defendant." N.C. Gen. Stat. § 1D-35(2)(g) (2007). Plaintiff argues that the jury should have been instructed on this element of punitive damages as it was supported by the Boyer evidence. However, as the trial judge properly excluded this evidence, and no other evidence admitted at trial supported this jury instruction, the trial court did not err in refusing to give this instruction. We thus overrule Plaintiff's argument.

C. New Trial
Plaintiff next contends the trial court's errors in excluding the Boyer evidence and denying the requested jury instruction were errors of law, warranting a new trial under N.C. Gen. Stat. § 1A-1, Rule 59(a)(8). We have concluded, however, that the trial court did not err in its rulings on these two issues. Accordingly, the trial court did not err in denying Plaintiff's motion for a new trial based on these alleged errors. Plaintiff's argument is overruled.

II. Plaintiff's Presumptive Loss of Property

A. Closing Argument Instruction
Plaintiff next argues the trial court erred in instructing Plaintiff not to include in her closing argument statements concerning attorney's fees she incurred in her claim for alimony and her presumptive loss of property in equitable distribution.
This Court reviews a trial court's ruling regarding the scope of a closing argument for abuse of discretion. State v. Anderson, 175 N.C. App. 444, 624 S.E.2d 393, disc. review denied, 360 N.C. 484, 632 S.E.2d 492 (2006). Damages for claims of alienation of affections and criminal conversation are limited to the present value in money of the support, consortium, and other legally protected marital interests lost due to a defendant's actions. Hutelmyer v. Cox, 133 N.C. App. 364, 514 S.E.2d 554, disc. review denied, 351 N.C. 104, 541 S.E.2d 146 (1999), appeal dismissed, 351 N.C. 356, 542 S.E.2d 211 (2000). These damages must be proved by a certain level of certainty and cannot be based on pure conjecture. Oddo v. Presser, 158 N.C. App. 360, 581 S.E.2d 123 (2003), aff'd in part and rev'd in part on other grounds, 358 N.C. 128, 592 S.E.2d 195 (2004).
At trial, Plaintiff presented evidence that she had incurred $201,909.68 in legal fees to the law firm of James, McElroy and Diehl, P.A., and $35,048.75 in expert witness fees to T. Randolph Whitt in the prosecution of her claims against her husband for alimony and equitable distribution under Chapter 50 of the North Carolina General Statutes. She also presented evidence that she would presumptively lose half of her net marital estate, worth $876,923.67, in equitable distribution. Prior to closing argument, the trial court instructed Plaintiff not to argue these specific economic losses to the jury.
At the time of the trial in this matter, Plaintiff's claims for alimony, equitable distribution, and attorney's fees were still pending in the district court of Mecklenburg County. Judgment had not been entered in that action, and as a result, Plaintiff proceeded with this action before she had accrued the alleged damages. The attorney's fees were potentially recoverable in Plaintiff's claim for alimony,[1] and Plaintiff could potentially have received an unequal distribution of the marital estate in equitable distribution.[2] As Plaintiff had not yet "lost" any attorney's fees or marital property, the alleged damages were speculative and not proven within a reasonable level of certainty. Oddo, 158 N.C. App. 360, 581 S.E.2d 123.
Accordingly, the trial court did not abuse its discretion in instructing Plaintiff not to argue these damages in closing argument. Plaintiff's argument is overruled.

B. Jury Instruction
Plaintiff also argues the trial court erred in not instructing the jury regarding the actual damages recoverable by Plaintiff. Plaintiff contends that, in light of the testimony offered during trial, she was entitled to the following jury instruction regarding actual damages recoverable:
Any loss of property as a result of the breakup of the marriage; and
In considering the loss of property suffered as a result of the breakup of the marriage, there is a presumption . . . of an equal division of a couple's marital estate upon their divorce.
However, as discussed above, a presumptive loss of half of Plaintiff's marital estate was speculative and not proven within a reasonable level of certainty to be considered an actual damage. Thus, the evidence did not "support a reasonable inference of each essential element of the claim or defense asserted." Anderson, 115 N.C. App. at 136, 443 S.E.2d at 739. Accordingly, the trial court did not err in declining to give the requested jury instruction. Plaintiff's contention is without merit.

C. New Trial
Plaintiff next contends that the trial court's errors in limiting Plaintiff's closing argument and denying the requested jury instruction were errors of law, warranting a new trial under N.C. Gen. Stat. § 1A-1, Rule 59(a)(8). Because we have concluded that the trial court did not err in its rulings on these two issues, we conclude further that the trial court did not err in denying Plaintiff's motion for a new trial based on these alleged errors. Plaintiff's argument is overruled.

III. New Trial on Compensatory and Punitive Damages
Plaintiff also argues that the jury verdict regarding compensatory and punitive damages is fatally flawed and entitles her to a new trial pursuant to N.C. Gen. Stat. § 1A-1, Rule 59(a). Plaintiff argues for a new trial on grounds that the jury's verdict was in manifest disregard of the trial court's instructions, pursuant to Rule 59(a)(5); the verdict was inadequate and appeared to be given under the influence of passion or prejudice, pursuant to Rule 59(a)(6); and the award does not bear a rational relationship to the sum needed to compensate Plaintiff and punish Defendant, pursuant to Rule 59(a)(7). A trial court's decision on a motion for a new trial under Rules 59(a)(5) and (a)(6) is addressed to the sound discretion of the trial judge. Faulkenberry v. Faulkenberry, 169 N.C. App. 428, 610 S.E.2d 237 (2005). Thus, we will not reverse a trial court's decision denying a new trial unless "an abuse of discretion is clearly shown resulting in a substantial miscarriage of justice." Travis v. Knob Creek, Inc., 84 N.C. App. 561, 563, 353 S.E.2d 229, 230, rev'd on other grounds, 321 N.C. 279, 362 S.E.2d 277 (1987). The jury's verdict must be given the utmost consideration and deference. Albrecht v. Dorsett, 131 N.C. App. 502, 508 S.E.2d 319 (1998). A trial court's ruling on a motion for a new trial under Rule 59(a)(7) is reviewed by this Court de novo. N.C. Indus. Capital, LLC v. Clayton, 185 N.C. App. 356, 649 S.E.2d 14 (2007).

A. Actual Damages
In an action for alienation of affections and criminal conversation, an injured spouse is entitled to recover, as compensatory damages, actual pecuniary loss, as well as "loss of consortium, humiliation, shame, mental anguish, loss of sexual relations, and the disgrace the tortious acts of defendant have brought." Scott v. Kiker, 59 N.C. App. 458, 462, 297 S.E.2d 142, 146 (1982). As for criminal conversation, our Courts have recognized that the measure of damages is incapable of precise computation. Gray v. Hoover, 94 N.C. App. 724, 381 S.E.2d 472, disc. review denied, 325 N.C. 545, 385 S.E.2d 498 (1989). In awarding such damages, the jury "may consider the loss of consortium, mental anguish, humiliation, injury to health, and loss of support[.]" Sebastian v. Kluttz, 6 N.C. App. 201, 220, 170 S.E.2d 104, 116 (1969). "[T]he gravamen of damages in [alienation of affections and criminal conversation] torts is mental distress, a fact that gives juries considerable freedom in their determinations." Hutelmyer, 133 N.C. App. at 373, 514 S.E.2d at 561 (quotation marks and citations omitted).
At the conclusion of the evidence and the closing arguments, the trial court instructed the jury that it could consider the following factors in determining the amount of actual damages that Plaintiff suffered as a result of Defendant's alleged torts:
[Alienation of affections:]
In determining the amount of money, if any, that the Plaintiff may recover, you may consider the degree to which the love, affection, society, companionship, comfort, sexual relationship, and favorable mental attitude which existed between the Plaintiff and her spouse has been destroyed or diminished[.]
[Criminal conversation:]
In determining the amount of money, if any[,] Plaintiff may recover, you may consider the loss by the Plaintiff of the consortium of her spouse. Consortium means the marital fellowship of husband and wife, and the right of each to the company, cooperation, affection, and[/]or aid to the other.
Any mental anguish, shame, humiliation or disgrace suffered by the Plaintiff;
Any loss of sexual relations between the Plaintiff and her spouse;
Any injury to the Plaintiff's reputation;
Any loss of support; and
Any other adverse effect on the quality of the marital relationship.
After concluding its deliberations, the jury returned a verdict finding Defendant liable for alienation of affections and criminal conversation and awarding $1.00 in actual damages on each claim. Plaintiff argues that the actual damages verdict is inconsistent with a finding of liability and is in manifest disregard of the trial court's charge. However, a plaintiff is entitled to at least nominal damages when the plaintiff has established her cause of action. Oddo, 158 N.C. App. 360, 581 S.E.2d 123. Thus, an award of nominal damages is consistent with a finding of liability. Additionally, a review of the record reveals conflicting testimony as to whether Plaintiff suffered any actual damages. It is the jury, as the finder of fact, who weighs the evidence and determines credibility. United States R.R. Admin. v. Hilton Lumber Co., 185 N.C. 227, 117 S.E. 50 (1923). Accordingly, we discern no abuse of discretion in the trial court's determination that the jury verdict was not in manifest disregard of the trial court's instructions and was not given under the influence of passion or prejudice. Furthermore, our de novo review reveals the award bears a rational relationship to the sum needed to compensate Plaintiff. Plaintiff's argument is overruled.

B. Punitive Damages
The trial court instructed the jury that it could consider the following factors in determining an amount of punitive damages, if any, to award Plaintiff: The reprehensibility of the defendant's motives and conduct;
The likelihood, at the relevant time, of serious harm to the Plaintiff;
The degree of the Defendant's awareness of the probable consequences of her conduct;
The duration of the Defendant's conduct;
The actual damages suffered by the Plaintiff; and
Any concealment by the Defendant of the facts or consequence by her conduct, and whether the Defendant profited.
Finally, if you determine, in your discretion, to award punitive damages, then you may award to the Plaintiff an amount which bears a rational relationship to the sum reasonably needed to punish the Defendant for egregiously wrongful acts and to deter the Defendant and others from committing similar wrongful acts.
The jury awarded Plaintiff $5,000.00 for alienation of affections and $105,000.00 for criminal conversation in punitive damages. Plaintiff argues that
[a]fter subtracting from Plaintiff's award of punitive damages the amount awarded to Defendant on her slander claim, Plaintiff was left with a judgment of $10,001.00 against Defendant . . . [and] [t]his amount is not sufficient to adequately punish Defendant for her egregiously wrongful acts and to deter her and others from committing similar wrongful acts in the future.
Plaintiff's argument misses the mark. The jury was required to award punitive damages, if any, to Plaintiff based on the trial court's instructions above, and was properly not instructed to consider any damages awarded to Defendant on her counterclaim. The issue here is not whether the "net" punitive damages awarded Plaintiff were sufficient, but rather whether the jury's determination of punitive damages for Defendant's alienation of affections and criminal conversation bore a rational relationship to the sum reasonably needed to punish Defendant and to deter Defendant and others from committing similar wrongful acts. We conclude the sums awarded were consistent with the trial court's instructions, and we discern no abuse of discretion in the trial court's determination that the punitive damages awards were not in manifest disregard of the trial court's instructions and were not given under the influence of passion or prejudice. Furthermore, our de novo review reveals the awards bear a rational relationship to the sum needed to deter Defendant and others from committing similar acts.
Consequently, the trial court did not err in denying Plaintiff's motion for a new trial under Rule 59(a).

IV. Liability and Damages for Slander

A. Liability
By Plaintiff's next argument, she asserts the trial court erred in denying her motion to set aside the jury verdict as to her liability for slander under N.C. Gen. Stat. § 1A-1, Rule 59(a)(7) as there was insufficient evidence to justify the verdict and the verdict is contrary to law.
Slander, oral defamatory utterances, may be actionable per se. Statements that are slanderous per se may form the basis of an action because in such cases malice and damages are presumed as a matter of law. Among statements which are slanderous per se are accusations of crimes or offenses involving moral turpitude, defamatory statements about a person with respect to his trade or profession, and imputation that a person has a loathesome [sic] disease.
Gibby v. Murphy, 73 N.C. App. 128, 131, 325 S.E.2d 673, 675 (1985).
Defendant offered evidence that Plaintiff made the following statements: (1) Defendant was poisoning Paul Boileau; (2) Defendant has had four or five husbands, and killed them all but one and she decided to let him live; (3) Defendant has forged legal documents; (4) Defendant tried to kill Paul Boileau; (5) Defendant kidnapped a neighbor boy; and (6) Defendant killed a former husband.
Plaintiff does not deny making these statements, but asserts instead that they are not slanderous. Plaintiff contends that these statements are mere abusive epithets, the repetition of rumor, or the expression of Plaintiff's opinion. We disagree. These statements are accusations of crimes involving moral turpitude. As such, this evidence is sufficient, if believed by a jury, to show slander per se. See Gibby, 73 N.C. App. 128, 325 S.E.2d 673 (concluding that evidence tending to show that defendant, by and through its agent, falsely accused plaintiff of being charged with the crime of embezzlement was sufficient, if believed by a jury, to show slander per se). Accordingly, the trial court did not err in denying Plaintiff's motion to set aside the jury's verdict on this issue as the verdict finding Plaintiff liable of slander is supported by sufficient evidence and is not contrary to law.

B. Damages
Plaintiff also asserts the verdict awarding punitive damages for slander should be vacated and a new trial ordered pursuant to Rule 59(a)(5) as the award was excessive and made under the influence of passion or prejudice.
The jury awarded Defendant $1.00 in compensatory damages for slander per se and $100,000.00 in punitive damages. Plaintiff claims that "this portion of the verdict makes [it] apparent that the jury did not consider each claim independently, but rather sought to offset Plaintiff's award of punitive damages[.]" However, Plaintiff offers no factual or legal support for this contention, relying solely on the similarity of the punitive damages awarded to each party to show passion or prejudice. Just as the jury listened to the evidence and determined that the punitive damage award of $105,000.00 for Plaintiff's criminal conversation and alienation of affections claims bore a rational relationship to the sum reasonably needed to punish Defendant and to deter Defendant and others from committing similar wrongful acts, the jury determined that the sum of $100,000.00 was reasonably needed to punish Plaintiff for her slanderous statements and to deter Plaintiff and others from committing similar wrongful acts. In giving the utmost consideration and deference to the jury's verdict, Albrecht, 131 N.C. App. 502, 508 S.E.2d 319, we conclude the trial court did not abuse its discretion in determining that the award was "appropriate and [] not a result of passion or prejudice."

V. Findings of Fact
Finally, Plaintiff argues that the trial court's order denying Plaintiff's Rule 59 motion contained inadequate findings of fact and conclusions of law. Specifically, Plaintiff alleges that the order failed to address the alleged errors under N.C. Gen. Stat. § 1A-1, Rules 59(a)(5) and (a)(6).
The trial court's finding of fact number nine states: "The damages awarded by the jury in this matter were appropriate and were not a result of passion or prejudice." This finding satisfies both 59(a)(5) and (a)(6) because an "appropriate" award could not be the result of manifest disregard of the jury instructions, and the finding specifically states that such awards were not the result of passion or prejudice. These findings of fact support the trial court's conclusion to deny Plaintiff's motion. As a result, we conclude the trial court made adequate findings of fact addressing Plaintiff's arguments for a new trial, and Plaintiff is not entitled to a new trial based on this alleged error.

VI. Jury Instructions

A. Alienation of Affections
The trial court has the sound discretion to determine whether to give a specific jury instruction, and such a decision will not be overturned absent an abuse of discretion. Osetek v. Jeremiah, 174 N.C. App. 438, 621 S.E.2d 202 (2005), aff'd per curiam, 360 N.C. 471, 628 S.E.2d 760 (2006).
Defendant first argues that the trial court erred in failing to include all the required elements of alienation of affections in the jury charge. Defendant specifically assigns error to the trial court's refusal to instruct the jury that the marriage in question must have been "happy."
A jury charge "will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed[.]" State v. Blizzard, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (quotation marks and citations omitted). To establish that a court erred by refusing to give a particular jury instruction, Defendant must demonstrate that "(1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury." Liborio v. King, 150 N.C. App. 531, 534, 564 S.E.2d 272, 274, disc. review denied, 356 N.C. 304, 570 S.E.2d 726 (2002).
The jury instruction given by the trial court, based on North Carolina Pattern Jury Instruction 800.20, explained that in order to prevail on a claim for alienation of affections, it must be shown: "First, that the Plaintiff and her spouse had a genuine marital relationship. . . . Second, that the Defendant engaged in malicious or/and wrongful conduct with respect to that marital relationship. . . . Third, that the Defendant's conduct injured the genuine marital relationship." The instruction defined "genuine marital relationship" as a relationship with "some degree of love and affection, society, assistance, companionship, comfort, sexual relationship and favorable mental attitude" between husband and wife.
Defendant argues that the trial court erred by not amending the pattern jury instruction to include the phrase "happily married" in defining a "genuine marital relationship." While some North Carolina cases have used the phrase "happily married" in describing a genuine marital relationship, see, e.g., McCutchen v. McCutchen, 360 N.C. 280, 283, 624 S.E.2d 620, 623 (2006), others have not, defining a genuine marital relationship only in terms of "love and affection." See, e.g., Nunn v. Allen, 154 N.C. App. 523, 533, 574 S.E.2d 35, 41 (2002), disc. review denied, 356 N.C. 675, 577 S.E.2d 630 (2003).
It is recognized by this Court that "the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions." In re Will of Leonard, 71 N.C. App. 714, 717, 323 S.E.2d 377, 379 (1984). Here, the trial court instructed the jury using the approved pattern jury instruction which adequately encompasses the law of North Carolina regarding claims for alienation of affections. The instruction, even without the phrase "happily married," leaves no cause to believe the jury was misled or misinformed. As the trial court's refusal to include the phrase "happily married" in the pattern instruction is not manifestly unsupported by reason or so arbitrary that it could not have resulted from a reasoned decision, we conclude the trial court did not abuse its discretion in refusing Defendant's requested jury instruction. Defendant's argument is without merit.

B. Libel and Qualified Privilege
Defendant also argues that the trial court's combined jury instruction on the issues of libel per se and qualified privilege incorrectly presented the law and misled the jury. Specifically, Defendant argues that the combined instruction confused the issue of the parties' competing burdens of proof and did not make it clear to the jury that Plaintiff had a burden to meet.
At trial, the court instructed the jury that "the burden of proof is on the Defendant" to prove a claim for libel per se. (Emphasis added.) The court instructed that in order to prove a claim for libel per se, Defendant was required to prove by a greater weight of the evidence that Plaintiff wrote the libelous statements about Defendant that were submitted to the jury and that Plaintiff published those statements. Then, in instructing the jury on qualified privilege, the trial court explained that "statements which would otherwise support a defamation action may be protected by a qualified privilege. On this issue, the burden of proof is on the Plaintiff." (Emphasis added.) The trial court instructed that in order to rely on such privilege,
the Plaintiff must establish the following. First, that the communication was made in good faith. Second, that the subject and scope of communication is one in which the party uttering it has a duty to uphold, or in reference to which she has a legal right or duty. And thirdly, the communication is made to a person or persons having a corresponding interest, right, or duty.
(Emphasis added.)
The trial courts's combined instruction clearly assigned Defendant the initial burden of proving the elements of libelper se, and then assigned Plaintiff the subsequent burden of proving the elements of a qualified privilege. These instructions correctly presented the law and made it clear that Plaintiff had a burden to meet. Accordingly, we conclude the trial court did not abuse its discretion in combining the jury instructions for libel per se and qualified privilege.
For the foregoing reasons, we find
NO ERROR as to the judgment entered upon the jury verdict, and the trial court's order denying Plaintiff's Rule 59 motion is AFFIRMED.
Judges HUNTER and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] See N.C. Gen. Stat. § 50-16.4 (2007) ("At any time that a dependent spouse would be entitled to alimony pursuant to G.S. 50-16.3A, . . . the court may, upon application of such spouse, enter an order for reasonable counsel fees for the benefit of such spouse, to be paid and secured by the supporting spouse in the same manner as alimony.")
[2] The expert witness fees incurred by Plaintiff could have been considered a distributional factor under N.C. Gen. Stat. § 50-20(c) in determining that an equal distribution was not equitable.